# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

GUS MILLER,

    *Petitioner*,

vs.

LENARD VARÉ, *et al.*,

    *Respondents.*

3:05-cv-00703-ECR-RAM

ORDER

This represented habeas matter under 28 U.S.C. § 2254 comes before the Court for a decision on the remaining claims.  In the claims that remain before the Court, petitioner Gus Miller seeks to set aside his 1997 Nevada state conviction, pursuant to a jury verdict, of conspiracy to commit murder and first degree kidnaping with use of a deadly weapon.

### *Preliminary Matters*

### *Jurisdiction over Remaining Portions of Ground 4*

Ground 4 presents various legal claims concerning the stop and search of the vehicle in which Miller was a passenger.  The Court previously dismissed all claims challenging the petitioner's conviction on Count IV for possession of a controlled substance with intent to sell for lack of jurisdiction over the subject matter.  The Court dismissed the claims because the concurrent sentence on that conviction had fully expired seven years prior to the filing of the federal petition. See #34, at 1-6 & 11.  In a subsequent order, the Court raised the question as to whether it had jurisdiction over the portions of Ground 4 that remained before the Court, querying whether the search-and-seizure related claims pertained only to the Count IV

conviction for possession of a controlled substance with intent to sell.  See #51, at 3 n.2 & 6.
Following review of the parties' responses, it appears that the search-and-seizure related
claims also pertain to evidence used in convicting Miller of the charges of conspiracy to
commit murder and first degree kidnaping with the use of a dangerous weapon.  The Court
accordingly concludes that it has jurisdiction over the remaining claims in Ground 4, but only
to the extent that the claims are directed to the convictions for conspiracy to commit murder
and first degree kidnaping with the use of a dangerous weapon.

### Procedural Default

Respondents contend that Grounds 2(a), 2(c), 2(d), 3(a)(1) & (2), 3(c)(1) & (2), 5(c),
6(a), 7(a), and 9 are barred by procedural default.  These grounds, with two exceptions, are
claims of trial error that Miller presented for the first time on state post-conviction review.
Applying N.R.S. 34.810(1)(b), the state high court rejected all such substantive claims that
Miller presented on post-conviction review independently of his ineffective assistance claims,
because the claims had not been presented on direct appeal. #19, Ex. 25, at 2 n.2.

Under the procedural default doctrine, federal review of a claim may be barred if the
state courts rejected the claim on an independent and adequate state law ground due to a
procedural default.  Review of a defaulted claim will be barred even if the state court also
rejected the claim on the merits in the same decision.  Federal habeas review will be barred
on claims that were rejected on an independent and adequate state law ground unless the
petitioner can demonstrate either: (a) cause for the procedural default and actual prejudice
from the alleged violation of federal law; or (b) that a fundamental miscarriage of justice will
result in the absence of review.  *See,e.g.,Bennet v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003).

In the reply, petitioner responds only as follows:

> The State of Nevada previously raised these issues in both
> of its Motions to Dismiss. #19 and 43.  This Honorable Court
> considered the motions and in fact dismissed certain claims. #42
> and 51.  This Court has previously found that the remaining
> claims have been properly exhausted and therefore the Court
> should consider Petitioner Miller's arguments.

#56, at 12.

1    Petitioner's reply confuses the exhaustion doctrine and the procedural default doctrine.

2    Even if the Court, *arguendo*, had made an affirmative holding that the remaining claims in the

3    petition were exhausted,[1] any such exhaustion holding would not overcome the procedural

4    default bar raised by the respondents.  Quite simply, in the context presented in this case,

5    claims can be exhausted but procedurally defaulted.  Miller appears to have exhausted the

6    claims by presenting the claims to the state courts, but the Supreme Court of Nevada held

7    that the claims were procedurally barred under the state law ground in N.R.S. 34.810(1)(b).

8    Petitioner presents no apposite argument to overcome the application of the procedural

9    default doctrine.  Accordingly, on the showing and arguments made, the Court holds, with the

10   exceptions noted below, that the listed claims are procedurally defaulted.

11   The cumulative error claims in Ground 5(c) and Ground 9, however, include claims of

12   cumulative error based upon ineffective assistance of counsel.  The claims are to that extent,

13   and only that extent, not procedurally defaulted.  All claims of cumulative error therein that

14   instead are based upon trial error rather than ineffective assistance of counsel are

15   procedurally defaulted.

16                                    ***Merits Review as to Remaining Claims***

17   The Court accordingly turns to a review on the merits as to the remaining claims , *i.e.*,

18   on the claims of ineffective assistance of counsel in Grounds 2(e), 3(b)(1-4), 4(c)(1-2), 5(b)(1-

19   2), 5(c) (part), 6(b), 6(c), 7(b), 8(a), 8(b), and (9) (part).

20   The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly

21   deferential standard for evaluating state-court rulings."  *Lindh v. Murphy*, 117 S.Ct. 2059,

22   2066 n.7(1997).  Under this deferential standard of review, a federal court may not grant

23

24   ─────────────────

25   [1]The Court has made no affirmative blanket holding that all claims remaining before the Court are
     exhausted.  The Court has held that certain claims are unexhausted, and, in rejecting a non-exhaustion
     argument as to certain specified claims, it has held that those specified claims were exhausted.  See,e.g.,

26   #34, at 8 (Ground 3(c)(2)).  If the respondents do not raise an exhaustion defense to a claim and the Court
     does not *sua sponte* raise an exhaustion issue as to the claim, the Court has no occasion to make an

27   affirmative holding that the claim is exhausted.  In short, a holding that specified claims are not exhausted,
     when issue is joined as to the exhaustion of those claims, does not constitute a holding that other claims are

28   exhausted.

1    habeas relief merely on the basis that a state court decision was incorrect or erroneous. *E.g.*,

2    *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003). Instead, under 28 U.S.C. § 2254(d),

3    the federal court may grant habeas relief only if the decision: (1) was either contrary to or

4    involved an unreasonable application of clearly established law as determined by the United

5    States Supreme Court; or (2) was based on an unreasonable determination of the facts in

6    light of the evidence presented at the state court proceeding. *E.g.*, *Mitchell v. Esparza*, 540

7    U.S. 12, 15, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003).

8    A state court decision is "contrary to" law clearly established by the Supreme Court only

9    if it applies a rule that contradicts the governing law set forth in Supreme Court case law or

10   if the decision confronts a set of facts that are materially indistinguishable from a Supreme

11   Court decision and nevertheless arrives at a different result. *E.g., Mitchell,* 540 U.S. at 15-16,

12   124 S.Ct. at 10. A state court decision is not contrary to established federal law merely

13   because it does not cite the Supreme Court's opinions. *Id.* Indeed, the Supreme Court has

14   held that a state court need not even be aware of its precedents, so long as neither the

15   reasoning nor the result of its decision contradicts them. *Id.* Moreover, "[a] federal court may

16   not overrule a state court for simply holding a view different from its own, when the precedent

17   from [the Supreme] Court is, at best, ambiguous." *Mitchell*, 540 U.S. at 16, 124 S.Ct. at 11.

18   For, at bottom, a decision that does not conflict with the reasoning or holdings of Supreme

19   Court precedent is not contrary to clearly established federal law.

20   A state court decision constitutes an "unreasonable application" of clearly established

21   federal law only if it is demonstrated that the court's application of Supreme Court precedent

22   to the facts of the case was not only incorrect but "objectively unreasonable." *E.g., Mitchell*,

23   540 U.S. at 18, 124 S.Ct. at 12; *Davis v. Woodford*, 333 F.3d 982, 990 (9th Cir. 2003).

24   To the extent that the state court's factual findings are challenged intrinsically based

25   upon evidence in the state court record, the "unreasonable determination of fact" clause of

26   Section 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d

27   943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly

28   deferential" to state court factual determinations. *Id.* The governing standard is not satisfied

by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973.

Rather, the AEDPA requires substantially more deference:

> . . . . [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

If the state court factual findings withstand intrinsic review under this deferential standard, they then are clothed in a presumption of correctness under 28 U.S.C. § 2254(e)(1); and they may be overturned based on new evidence offered for the first time in federal court, if other procedural prerequisites are met, only on clear and convincing proof. 393 F.3d at 972.

On a claim of ineffective assistance of counsel, the petitioner must satisfy the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He must demonstrate that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's defective performance caused actual prejudice. On the performance prong, the issue is not what counsel might have done differently but rather is whether counsel's decisions were reasonable from his perspective at the time. The reviewing court starts from a strong presumption that counsel's conduct fell within the wide range of reasonable conduct. On the prejudice prong, the petitioner must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *E.g., Beardslee v. Woodford*, 327 F.3d 799, 807-08 (9th Cir. 2003).

When evaluating claims of ineffective assistance of appellate counsel, the performance and prejudice prongs of the *Strickland* standard partially overlap. *E.g., Bailey v. Newland*, 263 F.3d 1022, 1028-29 (9th Cir. 2001); *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). Effective appellate advocacy requires weeding out weaker issues with less likelihood of success. The failure to present a weak issue on appeal neither falls below an objective standard of competence nor causes prejudice to the client for the same reason – because the omitted issue has little or no likelihood of success on appeal. *Id.*

1   The petitioner bears the burden of proving by a preponderance of the evidence that
2   he is entitled to habeas relief.  *Davis*, 333 F.3d at 991.

3   ***Ground 2(e):   Failure to Request Limiting Instruction***

4   In Ground 2(e), petitioner alleges that he was denied effective assistance of counsel
5   when his trial counsel failed to request a limiting instruction regarding the appropriate use of
6   the prior bad act evidence admitted at his trial.

7   The respondents have not directed the Court to a holding by the Supreme Court of
8   Nevada on this ineffective assistance claim.  The Court reviewed the state supreme court's
9   August 24, 2005, order of affirmance on state post-conviction review, and the Court could not
10  find a holding addressing the claim.  See #19, Ex. 25.  The Court accordingly reviews the
11  claim *de novo* rather than under the deferential AEDPA standard of review.

12  On direct appeal, the Supreme Court of Nevada summarized the trial evidence as
13  follows:

> Herbert Little ("Little") was a confidential informant for the
> Magnet Task Force of the La Paz County Sheriff's Department in
> Arizona.  On two occasions, Little participated in "controlled buys"
> of narcotics from appellant Gus William Miller ("Miller").  Soon
> thereafter, Miller and several other suspects were arrested and
> indicted on drug charges in Arizona.
>
> Following the arrests and indictments, La Paz County
> authorities relocated Little to Laughlin, Nevada, to ensure his
> safety.  In Laughlin, Little was given a trailer in which to live and
> await the trials of those individuals who were arrested as a result
> of his participation with the task force.
>
> On March 10, 1996, while Little was asleep in his trailer, a
> truck pulled into his driveway, which awakened him.  In the truck
> were Miller and Wanda Sergi ("Sergi").  While Little was in bed,
> Miller broke the window next to Little's head, pointed a gun at
> Little, and ordered Little out of the trailer.  Miller threatened to kill
> Little and informed him that he was taking him back to Arizona.
>
> As they were driving away, a police officer stopped them
> because the rear tire mount on the truck was loose.  Before the
> officer could approach them, Little emerged from the truck and
> told the officer that Miller and Sergi had guns and were trying to
> kill him.
>
> Miller and Sergi were arrested.  A search of the truck
> uncovered a loaded pistol on the floorboard where Miller was
> seated and six packages of marijuana in a purse in the glove

-6-

1
2
        compartment.    Officers  also  found  an  "owe  sheet"  and
methamphetamines on Sergi, and a .38 caliber bullet in Miller's
pocket that matched the bullets in the loaded pistol.

3 #19, Ex. 14, at 1-2.

4     The state high court further described the bad act evidence and the circumstances

5 surrounding the admission of the evidence as follows:

6
7
8
9
        At  trial,  the  state  filed  a  motion  in  limine  in  an  effort  to
introduce evidence of Miller's pending Arizona drug charges.  The
state argued that such evidence was a necessary part of the
'complete story' regarding Miller's motive to conspire to murder
Little.    The  district  court  granted  the  motion  and  admitted
testimonial evidence of the pending drug charges.

10 *Id.*, at 2.

11     Miller raised a claim on direct appeal that the trial court failed to provide a limiting

12 instruction regarding the proper use of the drug charges as prior bad act evidence.  The

13 Supreme Court of Nevada concluded that the claim lacked merit.  The state high court noted

14 that the district court had a duty in some situations to provide such a limiting instruction *sua*

15 *sponte*, but it held that Miller's case did not present such a situation, citing prior Nevada case

16 law.  *Id.*, at 3 & 3-4.

17     This Court is not persuaded that the petitioner has established the requisite prejudice

18 under *Strickland* on the corresponding claim of ineffective assistance of counsel.

19     Petitioner perhaps may have been able to obtain a limiting instruction as to the prior

20 bad act evidence if counsel had requested one.  And he perhaps may have been able to

21 obtain a reversal on appeal if his counsel had requested a limiting instruction and the trial

22 court further had failed to honor the request.

23     The pertinent inquiry under the *Strickland* prejudice analysis, however, is not whether

24 counsel would have obtained the instruction if he had requested it or whether a viable

25 appellate issue would have arisen if the request had been denied.  The pertinent inquiry under

26 *Strickland* instead is whether there is a reasonable probability that the outcome of the trial

27 would have been different if counsel had requested the limiting instruction.  Given the strong

28 evidence of the petitioner's guilt – in which he essentially was caught "red-handed" abducting

1   the informant against him on the drug charges while he was armed with a gun – this Court is

2   not persuaded that there is a reasonable probability that the petitioner would have been

3   acquitted if a limiting instruction had been requested and given.[2]

4        On *de novo* review, Ground 2(e) therefore does not provide a basis for habeas relief.[3]

5        **Ground 3(b)(1): Failure to Request a Fingerprint Examination of the Gun**

6        In Ground 3(b)(1), petitioner alleges that he was denied effective assistance of counsel

7   when his trial counsel failed to request an inspection of the handgun for fingerprints.

8        The Supreme Court of Nevada rejected this claim on the following grounds:

9
10                . . . [A]ppellant claimed that his trial counsel was ineffective
               for failing . . . to demand that the gun be processed for
               fingerprints.   Appellant failed to demonstrate that his trial
11

12          _____

13          [2]As discussed further on the next claim, the defense theory presented in opening statements was
          that Miller brought the gun but that he did not intend to kidnap or kill Little but instead only to bribe or
14          intimidate Little into not testifying in the Arizona case. The Court is not persuaded that there is a reasonable
          probability that, but for trial counsel's failure to request a limiting instruction, the jury would have acquitted
15          Miller based upon this explanation for why he had the primary witness against him in the drug prosecution in
          his truck in the predawn hours while armed with a gun that he brought with him.

16          [3]Petitioner relies on a statement in *Tavares v. State*, 117 Nev. 725, 30 P.3d 1128 (2001), that it is
          likely that cases involving the absence of a limiting instruction will not constitute harmless error. 30 P.3d at
17          1133. *Tavares*, however, was decided after both the trial and direct appeal in Miller's case. The Supreme
          Court of Nevada announced a new rule in *Tavares* under which the defendant no longer had the burden of
18          requesting a limiting instruction and under which the prosecutor "henceforth" had a duty to request the limiting
          instruction. If the prosecutor failed to do so, the district court was obliged to raise the issue *sua sponte*. The
19          court further announced a non-constitutional harmless error standard applicable to the failure to provide the
          limiting instruction. See 30 P.3d at 1132-33. In the context of these new rules, the state supreme court made
20          the above-referenced statement that it was likely that the absence of a limiting instruction would not constitute
          harmless error under the state law harmless error standard applied.
21
          *Tavares* was decided after Miller's trial. The non-constitutional harmless error standard discussed
22          therein applied to the district court's failure to give the instruction *sua sponte* rather than to a failure to request
          the instruction in the first instance. *Tavares* did not apply the constitutional *Strickland* prejudice standard
23          applied in this case on federal habeas review to the failure to request the instruction in the first instance. It
          further is noteworthy in this regard that the Supreme Court of Nevada -- applying the precedents in force at
24          the time of Miller's trial and direct appeal – held that the failure to give the limiting instruction *sua sponte* in his
          case was not error.
25
          Additionally, in *Tavares*, the conviction "rested primarily on circumstantial evidence as there was no
26          clear direct evidence showing Tavares's actions." 30 P.3d at 1133. In this case, there was abundant direct
          evidence of Miller's guilt. *Tavares* does not necessitate a conclusion on federal habeas review that there is a
27          reasonable probability – on the evidence presented at Miller's trial – that the outcome of the trial would have
          been different if Miller's trial counsel had requested and obtained a limiting instruction.
28

                                            -8-

1                 counsel's performance was deficient or that he was prejudiced.
2                 The theory of defense as presented in opening statements was that appellant brought the gun, but that he did not intend to
3                 kidnap or kill the victim, but rather, he intended to bribe or intimidate the victim into not testifying in the Arizona case.
4                 Appellant was observed by the police reaching down to the floor where the gun was ultimately found.  A bullet found in appellant's
5                 pocket matched the type of bullets found in the gun itself. Appellant failed to demonstrate that further testing of the gun
6                 would have revealed exculpatory evidence that would have had a reasonable probability of altering the outcome of the trial.
7                 Therefore, we conclude that the district court did not err in determining that this claim lacked merit.

8 #19, Ex. 25, at 7-8 (eleventh ground of error).

9       The state high court's rejection of this claim was neither contrary to nor an

10 unreasonable application of *Strickland*.

11       Petitioner makes bald assertions in the reply that "[h]ad Petitioner Miller's attorney

12 requested the fingerprint examination, there would have been ample evidence that the firearm

13 was possessed by one of the two other passengers in the vehicle," and that "[f]urther testing

14 of the firearm would have resulted in exculpatory evidence." #56, at 7.  These assertions

15 contradict the factual assertions of the defense made at trial, lack any foundation in the record

16 presented to the state courts, and are based upon nothing more than speculation.  Under

17 Nevada state post-conviction practice, a petitioner must attach affidavits, records or other

18 evidence supporting the factual allegations of the petition, and he may not present merely an

19 unsubstantiated claim.  *See* N.R.S. 34.370(4).  Moreover, in this case, the state district court

20 held an evidentiary hearing on the state petition and appointed counsel for the petitioner.  See

21 #19, Ex. 22.  On federal habeas review, petitioner does not point to any evidence in the state

22 post-conviction record in any way establishing that a fingerprint examination of the gun in fact

23 would have produced exculpatory evidence.   See also #54, Ex. H, Part 2, at 680-83

24 (discussing the limitations of fingerprint examination).  A claim of ineffective assistance of

25 counsel that is based upon pure speculation as to resulting prejudice fails to present a viable

26 claim under *Strickland*.  The state supreme court's rejection of the claim therefore was neither

27 contrary to nor an unreasonable application of clearly established federal law.

28       Ground 3(b)(1) therefore does not provide a basis for federal habeas relief.

1  ***Ground 3(b)(2): Failure to Conduct a Reasonable Inspection of the Case***

2      In Ground 3(b)(2), petitioner alleges that he was denied effective assistance of counsel

3  when his trial counsel failed to conduct a reasonable inspection of the case against him,

4  including, in particular an investigation of the victim.

5      The Supreme Court of Nevada rejected this claim on the following grounds:

6

7              . . . [A]ppellant claimed that his trial counsel was ineffective
             for failing to adequately investigate the victim.  Appellant failed to
             demonstrate that his trial counsel's performance was deficient or

8            that he was prejudiced.  Appellant failed to indicate what further
             investigation should have been performed such that there is a

9            reasonable probability of a different outcome.  Therefore, we
             conclude that the district court did not err in determining that this

10           claim lacked merit.

11  #19, Ex. 25, at 7 (tenth ground of error).

12      The state high court's rejection of this claim was neither contrary to nor an

13  unreasonable application of *Strickland*.

14      In the reply, petitioner acknowledges that trial counsel filed a motion in the trial court

15  seeking information regarding the confidential informant.  He urges, however, that "trial

16  counsel should have conducted an investigation independent of the motions he filed."  As

17  noted above under Ground 3(b)(1), a petitioner may not present merely an unsubstantiated

18  claim on Nevada state post-conviction review, and the state district court held an evidentiary

19  hearing and appointed counsel for petitioner.  On federal habeas review, petitioner does not

20  point to any evidence in the state post-conviction record in any way establishing either what

21  further investigation would have revealed or how the unspecified investigation results would

22  have affected the outcome at trial.  A claim of ineffective assistance of counsel that is based

23  upon pure speculation as to resulting prejudice fails to present a viable claim under *Strickland*.

24  The state supreme court's rejection of the claim therefore was neither contrary to nor an

25  unreasonable application of clearly established federal law.

26      Ground 3(b)(2) therefore does not provide a basis for federal habeas relief.

27  / / / /

28  / / / /

-10-

1    ***Ground 3(b)(3): Failure to File Motions Seeking Confidential Informant File***

2         In Ground 3(b)(3), petitioner alleges that he was denied effective assistance of counsel

3    when his trial counsel failed to file pretrial discovery motions seeking the confidential

4    informant's file.

5         The Supreme Court of Nevada rejected this claim on the following grounds:

6

7                    . . . [A]ppellant claimed that his trial counsel was ineffective
            for failing to file crucial pretrial formal discovery motions seeking

8            the confidential informant file.  Appellant's trial counsel did seek
            discovery of the confidential informant file.  Appellant failed to

9            indicate what further steps counsel should have taken that would
            have had a reasonable probability of altering the outcome of the

10           proceedings.  Therefore, we conclude that the district court did
            not err in determining that this claim lacked merit.

11   #19, Ex. 25, at 7 (ninth ground of error).

12        The state high court's rejection of this claim was neither contrary to nor an

13   unreasonable application of *Strickland*.

14        In the reply, petitioner does not address the fact that – as noted by the Supreme Court

15   of Nevada – trial counsel did in fact seek discovery of the confidential informant's file but the

16   motion was denied by the state district court. #53, Ex. C.  The petitioner's claim that counsel

17   failed to seek the file therefore is completely belied by the record.

18        The petitioner's bald assertion that petitioner "believes" that the file "would have made

19   a significant difference in the outcome of his trial" further is unsupported speculation.  As

20   noted above under Ground 3(b)(1), a petitioner may not present merely an unsubstantiated

21   claim on Nevada state post-conviction review, and the state district court held an evidentiary

22   hearing and appointed counsel for petitioner.  On federal habeas review, petitioner does not

23   point to any evidence in the state post-conviction record in any way establishing either what

24   the file in fact would have revealed or how the unspecified information would have affected

25   the outcome at trial.  A claim of ineffective assistance of counsel that is based upon pure

26   speculation as to resulting prejudice fails to present a viable claim under *Strickland*.

27        The state supreme court's rejection of the claim therefore was neither contrary to nor

28   an unreasonable application of clearly established federal law – both because the allegation

                                          -11-

1    that trial counsel failed to seek the file is directly belied by the record and further because the

2    petitioner's claim of resulting prejudice is based upon nothing more than speculation.

3        Ground 3(b)(3) therefore does not provide a basis for federal habeas relief.

4        **Ground 3(b)(4): Failure to Request Confidential Informant Jury Instruction**

5        In Ground 3(b)(4), petitioner alleges that he was denied effective assistance of counsel

6    when his trial counsel failed to request a jury instruction regarding the victim's credibility as

7    a confidential informant.

8        The Supreme Court of Nevada rejected this claim on the following grounds:

9

10           . . . [A]ppellant claimed that his trial counsel was ineffective
         for failing to demand a cautionary jury instruction addressing the
         credibility of confidential informant testimony. Appellant failed to

11        demonstrate that his trial counsel's performance was deficient or
         that he was prejudiced. An instruction addressing the credibility

12        of confidential informant testimony would have been inappropriate
         as the victim was not testifying as a confidential informant but as

13        the victim of the charged offenses. Moreover, a cautionary jury
         instruction would not have had a reasonable probability of altering

14        the outcome of the trial where there was testimony that the victim
         was reliable. Therefore, we conclude that the district court did not

15        err in determining that this claim lacked merit.

16    #19, Ex. 25, at 6 (seventh ground of error)(citation footnote omitted).

17        Petitioner provides no argument regarding this claim in the reply. The state supreme

18    court's rejection of this claim was neither contrary to nor an unreasonable application of

19    *Strickland*.

20        Ground 3(b)(4) does not provide a basis for federal habeas relief.

21        **Grounds 4(c)(1) & (2): Failure to Challenge Search at Trial and On Appeal**

22        In Ground 4(c)(1), petitioner alleges that he was denied effective assistance of trial

23    counsel when counsel failed to file a motion to suppress the admission of the gun into

24    evidence based upon an allegedly illegal search of the vehicle. In Ground 4(c)(2), petitioner

25    alleges that he was denied effective assistance of appellate counsel when counsel failed to

26    challenge the search on appeal.

27        The Supreme Court of Nevada rejected the claim based upon trial counsel's failure to

28    file a pretrial motion to suppress without assigning detailed reasons. See #19, Ex. 25, at 7.

-12-

1    The Supreme Court of Nevada did, however, assign detailed reasons with regard to

2    the underlying substantive issue when it rejected the claim of ineffective assistance of

3    appellate counsel:

> . . . [A]ppellant claimed that his appellate counsel failed to
> argue that the trial court committed reversible error when it
> permitted introduction of evidence obtained through an illegal
> search and seizure.  Appellant claimed that the stop of the
> vehicle, in which he was a passenger, was pretextual and that
> there was no consent or warrant for a search of the glove
> compartment in which marijuana packaged for sale was found.
> Appellant failed to demonstrate that his appellate counsel's
> performance was deficient or that this issue had a reasonable
> likelihood of success on appeal.  First, appellant had no standing
> to challenge the search of the vehicle as he was a passenger in
> the vehicle and he was not an owner of the vehicle, nor had he
> rented or borrowed the vehicle from the registered owner.  Even
> assuming that appellant had standing to challenge the search of
> the car, appellant failed to demonstrate that the search was not
> valid because appellant failed to establish that the stop was
> pretextual and because the record reveals that the marijuana was
> discovered in an inventory search of an impounded vehicle.
> Therefore, we conclude that the district court did not err in
> determining that this claim lacked merit.

14    #19, Ex. 25, at 10-11 (citation footnotes omitted).[4]

15    In the reply, petitioner does not challenge the proposition that "the officer may have

16    had probable cause to stop the vehicle for the traffic stop," which was based upon, *inter alia*,

17    the loose rear tire mount.  See #56, at 8, lines 8-12; *id.*, at 11, lines at 14-15.  He argues,

18    however, that the circumstances did not create probable cause to search the vehicle because

19    it is not illegal to possess a firearm and the information given to the officer was only "that there

20    was a weapon in the vehicle."  *Id.*, at 8.  Petitioner urges that the fact only that a weapon is

21    in a vehicle does not create probable cause to believe that a crime has been committed.

22    Petitioner misstates the record.  According to the officer's testimony, Little told the

23    officer that Miller and Sergi had guns *and that they were trying to kill him*. #54, Ex. H, Part 1,

---

[4]This Court has assumed, *arguendo*, that Grounds 4(c)(1) and (2) were exhausted vis-à-vis the
introduction of the weapon as well as the marijuana.  As noted previously, the Court does not have jurisdiction
over a challenge to the conviction for possession of a controlled substance with intent to sell because the
concurrent sentence on that charge fully expired before petitioner sought federal habeas relief.  See text,
*supra*, at 1-2.  To the extent, if any, that the grounds were not exhausted vis-à-vis the introduction of the gun,
this Court rejects the claims on *de novo* review for substantially the reasons assigned in the text.

1  at 633, lines 16-18.  This statement undeniably created probable cause for the officer to

2  believe that a crime had been committed, was being committed, or was about to be

3  committed.  Petitioner's probable cause argument thus is based upon a statement that is

4  directly belied by the record.[5]

5      Moreover, petitioner notes, but does not challenge, the Nevada Supreme Court's

6  holding that he did not have standing to challenge the post-stop search because he was only

7  a passenger in the vehicle.   If petitioner had no standing, then the remaining issues

8  concerning the validity of the post-stop search do not matter.  Petitioner brings forward no

9  apposite authority or argument in any way suggesting that the state supreme court's holding

10 that he lacked standing was either contrary to or an unreasonable application of clearly

11 established federal law at the time of his trial and direct appeal.

12     On the showing and arguments made, petitioner therefore has failed to establish that

13 the Nevada Supreme Court's rejection of these claims of ineffective assistance of trial and

14 appellate counsel was either contrary to or an unreasonable application of clearly established

15 federal law.

16     Grounds 4(c)(1) and 4(c)(2) do not provide a basis for federal habeas relief.

17     ***Ground 5(b)(1):  Failure to Seek Severance***

18     In Ground 5(b)(1), petitioner alleges that he was denied effective assistance of trial

19 counsel when counsel failed to request a severance of his trial from that of his co-defendants.

20     The Supreme Court of Nevada rejected the claim presented to that court on the

21 following grounds:

22

23 _____

24     [5]The multiple suspicious circumstances leading up to and immediately following this statement by
Little further would tend to give an officer probable cause to search, including, *inter alia*, Miller's repeatedly
25 reaching to the floorboard where the gun ultimately was recovered, despite being repeatedly instructed not to
do so and to exit the vehicle.  Miller stopped reaching down and exited the vehicle only after the officer told
26 him that if he reached down one more time the officer would shoot him.  The weapon further was recovered
on the floorboard right underneath where Miller had been seated, in a place where the passengers or driver
27 could reach, not in a separate compartment such as a glove box.  See #54, Ex. H, Part 1, at 625-38; *id.*, Part
2, at 672-75.  Any claim that the officer did not have probable cause to conduct the minimal search that
28 resulted in the loaded gun being found on the floorboard is completely without merit.

. . . [A]ppellant claimed that his trial counsel was ineffective for failing to file a motion to sever his trial from that of his co-defendants. Appellant claimed that his trial counsel's performance was hampered because the district court limited defense counsel from asking questions previously asked by the counsel for co-defendants. He further claimed that he was unable to testify because the trials were joined, and thus, he was unable to have evidence admitted relating to bribery or intimidating of a witness. Appellant failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced. Appellant failed to demonstrate that a joint trial was improper. Appellant failed to demonstrate that the ground rules established by the district court were unreasonable or hampered his trial counsel, and he failed to indicate what questions he was prevented from asking as a result of the district court's admonition. Appellant further failed to demonstrate that he was prevented from testifying simply because his co-defendants had testified. Therefore, we conclude that the district court did not err in determining that this claim lacked merit.

#19, Ex. 25, at 9-10 (fourteenth ground of error)(citation footnote omitted).

In the reply, the represented petitioner argues, in total, only as follows:

. . . . Petitioner Miller's trial counsel failed to request a separate trial for Petitioner Miller although the defenses of the co-defendants were irreconcilable.

The Nevada Supreme Court's denial of Petitioner Miller's claim was an objectively unreasonable application of *Strickland*. Claim 5(b)(1) should be granted.

#56, at 8-9.

Petitioner has the burden on federal habeas review of demonstrating that he is entitled to relief. The petitioner's essentially one-line argument falls far short of demonstrating that the Nevada Supreme Court's rejection of the claim was an objectively unreasonable application of *Strickland*. On the showing and conclusory argument made, petitioner has failed to establish that the Nevada Supreme Court's decision was either contrary to or an unreasonable application of clearly established federal law.

Ground 5(b)(1) does not provide a basis for federal habeas relief.

***Ground 5(b)(2): Failure to Present Defense and Advice to Not Testify***

In Ground 5(b)(2), petitioner alleges that he was denied effective assistance of trial counsel when counsel failed to present an adequate theory of the defense. Petitioner did not provide any particular allegations seeking to support this claim other than the allegation that

1  trial counsel allegedly was ineffective because he advised petitioner to not testify in his own

2  defense, such that petitioner thus allegedly was not able to establish a reasonable doubt as

3  to who possessed the gun and drugs.

4        The Supreme Court of Nevada rejected the claim presented to that court on the

5  following grounds:

6            . . . [A]ppellant claimed that his trial counsel erroneously
              advised him not to testify on his own behalf.  Appellant claimed
7            that his testimony would have established reasonable doubt as to
              who possessed the gun and drugs.  Appellant further indicated
8            his testimony would have cast doubt that he kidnapped the
              victim or conspired to commit the victim's murder.  Appellant
9            failed to demonstrate that his trial counsel's performance was
              deficient or that hew was prejudiced.   Appellant failed to
10           demonstrate that any testimony would have had a reasonable
              probability of altering the outcome of the trial given the substantial
11           evidence of guilt presented at trial.  Further, it was reasonable to
              advise appellant not to testify in light of at least one prior felony
12           conviction that could have been used for impeachment purposes.
              Therefore, we conclude that the district court did not err in
13           determining that this claim lacked merit.

14  #19, Ex. 25, at 8 (twelfth ground of error)(citation footnote omitted).

15        The state supreme court's rejection of this claim was neither contrary to nor an

16  unreasonable application of *Strickland*.  In the reply, the petitioner contends that he would

17  have testified that he had no knowledge that a weapon or other contraband was in the vehicle

18  and that, based upon this testimony, the jury "could have" reasonably acquitted him.  The

19  Nevada Supreme Court's conclusion that there was not a reasonable probability that any such

20  testimony would have altered the outcome of the trial was not an unreasonable application

21  of *Strickland*.  This Court similarly is not persuaded that there was a reasonable probability

22  that the jury would have rendered a different verdict if only they had been presented with

23  testimony by Miller that he had no knowledge of the gun.  The arresting officer testified that

24  Miller repeatedly reached down to where the gun was found on the floorboard despite being

25  told not to do so and to exit the vehicle.  Miller stopped and complied only when the officer

26  told him that if he reached down one more time he would be shot.  When the gun was

27  recovered from the floorboard right by where Miller had been sitting, the gun was loaded, with

28  a round chambered.  A .380 caliber hollow point cartridge matching the cartridges found in

the pistol was found in Miller's pocket.  See #54, Ex. H, Part 1, at 629 & 634-41.  There was scant prospect that testimony by Miller that he did not know about the pistol – a weapon that was located in precisely the area that he was repeatedly reaching for and for which he carried matching ammunition – would have resulted in an acquittal.  There would have been even less of a prospect of such an outcome following impeachment with a prior felony conviction.  It "could have" happened, but there was not a reasonable probability that it would.

The Nevada Supreme Court's rejection of the claim therefore was neither contrary to nor an unreasonable application of clearly established federal law.

Ground 5(b)(2) does not provide a basis for federal habeas relief.[6]

### Ground 5(c)(part):  Cumulative Error

In the portion of Ground 5(c) that remains before the Court, Miller alleges cumulative error based upon the multiple alleged instances of ineffective assistance of counsel.

The Supreme Court of Nevada rejected the cumulative error claim presented to that court on the following grounds:

> . . . [A]ppellant claimed that various constitutional rights were violated due to ineffective assistance of counsel and cumulative errors.  Because appellant failed to demonstrate that he received ineffective assistance of counsel, we conclude that the district court did not err in determining that this claim lacked merit.

#19, Ex. 25, at 14-15 (final ground of error).

The state high court's rejection of this claim was neither contrary to nor an unreasonable application of clearly established federal law.  Following review of all of the claims of ineffective assistance of counsel, including those discussed *infra*, this Court is not persuaded that the meritless claims carry any more force in the aggregate than they do in isolation.  Petitioner provides no persuasive, non-conclusory argument to the contrary.

The portion of Ground 5(c) that remains thus does not provide a basis for relief.

---

[6]The Court again reiterates, with regard to petitioner's reference to lack of knowledge of other contraband, that the Court lacks jurisdiction over the subject matter of any challenge to the conviction for possession of a controlled substance with intent to sell, because the concurrent sentence on that charge fully expired before petitioner sought federal habeas relief.  See text, *supra*, at 1-2.

1

***Grounds 6(b) & (c): Failure to Challenge Alleged Prosecutorial Misconduct***

2      In Ground 6(b), petitioner alleges that he was denied effective assistance of trial

3  counsel when counsel failed to object to alleged prosecutorial misconduct.  In Ground 6(c),

4  he alleges that he was denied effective assistance of appellate counsel when counsel failed

5  to raise the issue of the alleged prosecutorial misconduct on appeal.

6      In this Court, both counsel argue this claim as if petitioner were claiming that the

7  "prosecutorial misconduct" alleged in Ground 6 of the federal petition was the prosecution's

8  introduction of allegedly impermissible other bad acts evidence.

9      That is not what petitioner alleged in Ground 6 of the petition in federal court.

10  Petitioner instead alleged:

11              Petitioner was denied his rights . . . to effective assistance
        of counsel . . . when the State prosecutor engaged in numerous
12      egregious instances of misconduct during the trial, *particularly
        during his closing argument*; when his attorney failed to request
13      and the court failed to give appropriate cautionary instructions to
        the jury regarding each instance of prosecutorial misconduct; . .
14      . and when his appellate counsel, who was also his trial counsel,
        failed to raise issues pertaining to the egregious prosecutorial
15      misconduct in his direct appeal.

16  #5, at 13 (emphasis added).

17      Federal habeas claims must be alleged with specificity.  See *Mayle v. Felix*, 545 U.S.

18  644, 649, 125 S.Ct. 2562, 2566, 162 L.Ed.2d 582 (2005).  The only specific allegation in the

19  foregoing, such as it is, is an allegation that the prosecutor engaged in unspecified

20  misconduct during closing argument.  A vague blanket incorporation of all remaining portions

21  of the federal petition and/or of large blocks of state court filings is not effective to state any

22  specific claim.  Federal Ground 6 contains no allegation whatsoever that the prosecutor

23  engaged in "misconduct" by introducing other bad acts evidence.  No such claim is properly

24  before this Court, and no such claim of a failure by trial and appellate counsel to challenge

25  "prosecutorial misconduct" – on this basis – was considered in the Nevada Supreme Court's

26  decision on the state post-conviction appeal.  See #19, Ex. 25, at 14.

27      In any event, this Court holds, on *de novo* review, that the claims of ineffective

28  assistance of counsel now being argued in federal court are without merit.

1    Petitioner contends in the reply on Ground 6(b) that the prosecution and the trial court

2   failed to comply with Nevada state law procedural requirements for the introduction of other

3   bad act evidence under the Nevada Supreme Court's *Petrocelli*, *Tinch,* and related decisions.[7]

4   He maintains that he was prejudiced by trial counsel's failure to object to the prosecutor's

5   introduction of the bad act evidence because it was highly probable that, if an objection had

6   been raised, the trial court would have ruled that the evidence was improperly admitted.  He

7   further asserts that if the bad act evidence had not been admitted, it is highly probable that

8   the outcome of the trial would have been different. #56, at 9-10.

9    Petitioner contends, in the reply on Ground 6(c), that appellate counsel should have

10   raised the issue on direct appeal and that, if counsel had done so, the outcome of the appeal

11   "could have" been different. #56, at 11.

12    These contentions notwithstanding, appellate counsel did in fact raise an issue on

13   direct appeal that the state trial court had failed to hold a *Petrocelli* hearing and comply with

14   Nevada state law requirements for the introduction of the other bad act evidence.  The

15   Supreme Court of Nevada rejected that challenge on the following grounds:

16    . . . . At trial, the state filed a motion in limine in an effort
    to introduce evidence of Miller's pending Arizona drug charges.
17    The state argued that such evidence was a necessary part of the
    "complete story" regarding Miller's motive to conspire to murder
18    Little.  The district court granted the motion and admitted
    testimonial evidence of the pending drug charges.
19
20    Miller contends on appeal that several errors were
    committed below in connection with the admission of the Arizona
21    drug charges.  First, he contends that the Arizona drug charges
    were not part of the res gestae of the alleged conspiracy to
22    commit murder.  Second, he contends that his drug charges were
    irrelevant to the conspiracy to commit murder charge.  Third, he
23    contends that evidence of his drug charges was more prejudicial
    than probative.  *Fourth, he contends that the district court failed*
24    *to hold a* Petrocelli *hearing regarding the admissibility of the*
    *evidence. . . . . .*

25    We concluded Miller's contention lacks merit.  While the
    Arizona drug charges were not necessary to explain the
26

27   ────────────

28    [7]See *Petrocelli v. State*, 101 Nev. 46, 692 P.2d 503 (1985); *Tinch v. State*, 113 Nev. 1170, 946 P.2d
    1061 (1997).

-19-

kidnapping, the trial court did not abuse its discretion in admitting them to establish the "complete story" of the conspiracy.  Thus, with respect to the conspiracy count, a weighing of prejudice versus probative value was not necessary.  <u>See</u> NRS 48.035(3); State v. Shade, 111 Nev. 887, 894, 900 P.2d 327 . . . (1995).

Even if this evidence was not part of the res gestae as to any of the substantive charges, this evidence was clearly admissible to establish a motive for these offenses.  In this connection, the district court conducted a hearing on the record regarding the state's motion in limine and concluded that the evidence was admissible.  *Miller's claim that the trial court failed at this hearing to comply strictly with Tinch v. State, 113 Nev. 1170, 1176, 946 P.2d 1061 (1997), must be rejected as harmless error.  This is because the evidence would have been admissible had the <u>Tinch</u> analysis been undertaken*.  <u>See</u> Qualls v. State, 114 Nev. 900, 903, 961 P.2d 765, 767 (1998).

#19, Ex. 14, at 2-3 (emphasis added).

Accordingly, when petitioner raised a claim on state post-conviction review that appellate counsel had been ineffective for failing to raise a challenge to the admission of the bad act evidence on direct appeal, the Nevada Supreme Court rejected the claim *because the challenge had in fact been raised – and rejected – on direct appeal*:

. . . . [A]ppellant claimed that his appellate counsel was ineffective for failing to argue that the district court committed reversible error when it failed to conduct a <u>Petrocelli</u> hearing prior to granting the State leave to present prior bad act evidence.  Appellant claimed that the State failed to provide clear and convincing evidence of the prior bad acts.  Appellant further claimed that because Arizona later dismissed the drug charges that served as the prior bad acts that the prior bad acts were not credible.  Appellant failed to demonstrate that his appellate counsel's performance was deficient or that these issues had a reasonable probability of success on appeal.  *This court considered appellant's claim that the district court failed to conduct the required <u>Petrocelli</u> hearing and concluded that it was harmless error because the prior bad act evidence would have been admissible had the proper hearing been conducted*.  Appellant failed to indicate what further argument should have been made that would have had a reasonable probability of altering the outcome of the direct appeal.  Appellant further failed to demonstrate that information relating to the subsequent dismissal of the Arizona drug charges would have had a reasonable probability of altering the outcome of the direct appeal.  Therefore, we conclude that the district court did not err in determining that these claims lacked merit.

#19, Ex. 25, at 11-12 (emphasis added)(citation footnotes omitted).

/ / / /

The Supreme Court of Nevada is the final arbiter of Nevada state law.  The state high court's holding that the prior bad act evidence would have been admissible even if the *Petrocelli* and *Tinch* Nevada state law procedures had been followed is unassailable on federal habeas review.

This state law holding completely undercuts any viable claim of prejudice on petitioner's claims that he was denied effective assistance of counsel because trial and appellate counsel failed to challenge "prosecutorial misconduct" occurring when the State introduced allegedly impermissible other bad acts evidence.  The Nevada Supreme Court's holdings on direct appeal and state post-conviction review establish that the evidence in fact was admissible under Nevada state law.  Petitioner therefore cannot establish a reasonable probability that the outcome of either the trial or the appeal would have been different if counsel had challenged the alleged "prosecutorial misconduct."  He therefore cannot demonstrate prejudice under *Strickland*.

Petitioner further cannot establish deficient performance by appellate counsel, because the challenge that he maintains should have been brought in fact was brought by appellate counsel, albeit not as a challenge to "prosecutorial misconduct."

Grounds 6(b) and 6(c) therefore do not provide a basis for federal habeas relief.

### Grounds 7(b) and 8(a): Cumulative Error

Grounds 7(b) and 8(a) present redundant claims of cumulative error based upon ineffective assistance of counsel.  The claims do not provide a basis for federal habeas relief for the reasons assigned above as to the remaining portion of Ground 5(c).

### Ground 8(b):  Failure of Appellate Counsel to Raise Constitutional Claims

In Ground 8(b), petitioner alleges that he was denied effective assistance of counsel because appellate counsel failed "to raise all constitutional grounds for relief, including each and every sub-part of those grounds, . . . in his direct appeal." #5, at 17.  The reply similarly is conclusory, asserting only that "[t]he failure of Petition [sic] Miller's appellate counsel to raise all constitutional issues on direct appeal negatively impacted his direct appeal to such a degree as to deny Petitioner Miller effective assistance of counsel." #56, at 12.

1    It does not appear that the Supreme Court of Nevada considered any such claim on

2 the state post-conviction appeal.  The Court holds, on *de novo* review, that the claim in any

3 event is completely without merit.  As the Court observed on Grounds 6(b) and 6(c), federal

4 habeas claims must be alleged with specificity.  *Mayle, supra.*  A vague and nonspecific claim

5 only that counsel failed "to raise all constitutional grounds for relief" fails to present a

6 sufficiently specific and viable claim for federal habeas relief.

7    Ground 8(b) therefore does not provide a basis for federal habeas relief.

8    ***Ground 9 (part): Cumulative Error***

9    The remaining portion of Ground 9 presents another redundant claim of cumulative

10 error based upon ineffective assistance of counsel.  The claim does not provide a basis for

11 federal habeas relief for the reasons assigned above as to the remaining portion of Ground

12 5(c).

13    IT THEREFORE IS ORDERED, for the reasons assigned: (a) that Grounds 2(a), 2(c),

14 2(d), 3(a)(1) & (2), 3(c)(1) & (2), 6(a), and 7(a) are DISMISSED with prejudice as procedurally

15 defaulted; (b) that Grounds 2(e), 3(b)(1-4), 4(c)(1-2), 5(b)(1-2), 6(b), 6(c), 7(b), 8(a), and 8(b)

16 are DISMISSED with prejudice on the merits; and (c) that Grounds 5(c) and 9 are

17 DISMISSED with prejudice, on the merits to the extent that the claims are based upon

18 allegations of ineffective assistance of counsel and on the basis of procedural default to the

19 extent that the claims are not.[8]

20    / / / /

21

22    [8]The case was decided on the original *pro se* petition, and a motion for leave to file an amended petition never was presented to the Court.

23

24    Petitioner's retained counsel appeared in the case after the Court had granted the respondents' motion to dismiss on the basis of lack of complete exhaustion and had given petitioner a period of time to seek relief in alternative to a complete dismissal.  Following counsel's substitution into the case for the *pro se*

25 petitioner, the order regarding the need to make an election as to the unexhausted claims was disregarded. The Court issued a compliance order and then an order denying a requested extension. ##37 & 40.  In the second order, the Court stated that -- after petitioner complied with the then-pending directives regarding the

26 unexhausted claims -- the Court would consider a request for a reasonable period of time to prepare an amended petition, if affirmatively requested by petitioner by separate motion. #40, at 3, lines 15-24.

27

28    No such motion was filed.  The case accordingly has been decided on the original *pro se* petition.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Clerk of Court shall enter final judgment accordingly, in favor of respondents and against petitioner, dismissing this action with prejudice.

DATED:   February 2, 2009

_____
EDWARD C. REED
United States District Judge